Good morning, Your Honor. May it please the Court. I am Albert Aldesco, representing the appellant Tamara Smith. I hope to discuss this morning why the trial court's order granting rescission of the Marine Insurance Agreement on account of a failure by the appellant, the insured applicant, to disclose a fact is unwarranted under the federal doctrine of uberma fide because it requires an act which is obviously impossible, the disclosure of a fact which is not within the applicant's knowledge. By severing the necessary connection between an applicant's duty of full disclosure and the applicant's knowledge of facts, the trial court's ruling gives insurance companies a blank check to cancel their promises whenever an applicant has less than perfect knowledge. Could I ask you a question? So if this doctrine does not apply, then am I free to explain how you could possibly win under New York law? Your Honor, the doctrine does apply. It simply doesn't, the case doesn't fall under the uberma fide because, in this case, the applicant did not have any knowledge of the material facts. She asked for challenge. Okay, but wouldn't that just mean that the doctrine doesn't void the contract and we still have to apply New York contract law to figure out who who's right about whether the contract is void? And I'm just struggling with how the language in the contract about how it's null and void in the event of non-disclosure of a material fact wouldn't void the contract under New York contract law, forgetting this whole maritime doctrine. Well, Your Honor, these are not the issues that were before the trial court on summary judgment. What the court decided was that, in fact, the applicant had a duty to disclose these facts, even though these facts were unknown to her. The court cited this court's opinion in New Hampshire Insurance Company versus St. Moi, Inc., which is an entirely different kind of case. That is a case where the applicant had a duty to disclose these facts. The applicant had been asked the purchase price of the vessel on the application and had been asked about their current insurance company. And the applicant provided substituted its own assessment of the value of the vessel and also provided the name of their prior insurer. But so let's say let's say we agree with you just hypothetically. Hypothetically, we agree with you. The district court rested its summary judgment motion hypothetically on an incorrect legal principle. Even if that's true, we could affirm on other legal grounds that are clear in the record. And I'm just having trouble understanding that even if you're right that this maritime doctrine doesn't apply, how this contract that has this language about it being void, if a material fact is not disclosed, could possibly lead to a non-disclosure of a contract. Could lead to a result that wins for your client. But you're right. Not even under the law of New York or the law of any state can a person be deemed to have committed any negligence for failing to disclose something which was impossible to them to disclose. Well, what was it impossible? I mean, wasn't she dating this guy who had the criminal record and they were working together? And he I mean, how is it impossible for her to learn about this? Well, she asked him about it. She asked him about it and he denied it. She even asked him about it after the policy was rejected after the coverage was rejected by the insurance company. And he still denied it. But she could have. I mean, it's not impossible. She could have run a background check just like the insurance company did. Right. That's correct. And the insurance company certainly had the same means and opportunity as she did to investigate these facts. And the insurance company simply, you know, wanted her to do their underwriting before they wrote the policy. I mean, what this does is that it puts it puts all the all the burden on the applicant to do the insurance company's job. They the insurance company certainly had the means and opportunity to to do a background check on this liquor challenge. They didn't do so. They waited until a claim was made to start doing their underwriting and to start finding and to determine and and moreover, you know, they were dating. That's correct. They're no longer dating. Well, it's not a fact in the record, but their relationship was not a one of agency or one where, you know, Kurchilovich was not her employee. He was not somebody who was charged with obtaining insurance on her behalf. Well, could I ask you about that? Because it seems like he signed the fourth page of the insurance application. So why isn't he her agent as as to the part of this application that he apparently signed and signed the page where it said no to the criminal history? Well, that's correct. And that's a fact that should should favor the insured, not the insurance company. After all, why doesn't that show that he was her agent as to as to the action of applying for insurance? Because she was the one who signed the application. The application was taken out in her name. They went to the insurance. It's only an incidental fact that they went to the insurance company, to the agent's office together. And there were other people there in the office as well who helped her fill out the application. But that wouldn't make them responsible for this as well. She wouldn't have been responsible for for for for their errors or what they failed to disclose. She can only be responsible for her own actions. She can only be responsible for what she knows. There is case law, though, that sometimes people have agents in this context. Right. And so sometimes you could have an agent applying for a policy on your behalf. So I don't think it's always that you only are liable for your own actions in this contract realm. Well, absolutely, Your Honor. But this is not the case here. So in the cases that were cited by the Appleby, by Great Lakes, such as CNR, Atkin versus Smith. In that case, the person who who filled out the application was an employee, was a crew member of the owner of the boat. He had lived on a boat by himself in the owner's absence. He had undertaken major repairs for the boat. There is no such agency here. Same thing with the case of Port Lynch versus New England, International Assurity of America. In that case, there was a failure by a office by a new office manager to provide the information. Clearly, there was a delegation of authority in those cases. There is no delegation of authority here. She did not delegate authority to Kirchhoff. She didn't go there by himself to fill out an application on her behalf. She did. She did it. And she relied, innocently relied on his answers. But in the same way in which the insurance company did, they could have done a check, but they didn't, because it helps them not to have, you know, helps them not to know. Kind of a willful ignorance on their part, because, you know, they can then argue that it wasn't their responsibility. Well, if we agree with you, wouldn't we be creating an incentive for willful ignorance on the insurance applicant's part? I mean, it seems like your client was in a pretty good position to know this man. Your Honor, you know, there is things that we can know. There are things that we know that we don't know. And there are things that we don't know that we don't know. And this is the third one. I mean, there was no way for her to know that this man had a misdemeanor violation under a Land Use Act in California. Well, can I, counsel, can I ask you about that? Because I guess I thought the standard was, you know, she had to dispose information that she either knew or ought to have known. It seems to me that's pretty well settled under this duty of utmost good faith that it includes information that you ought to have known. And so I guess my problem with your position here is just that it seems like we need more facts, right? I mean, yes, she asked him the question, but what if, notwithstanding his answer no, there were a lot of surrounding facts that suggested she still ought to have known. Like, for example, maybe she was with him when he committed the violation and they were dating. And so it would be impossible for her not to have known that he ended up being subject to these criminal charges. Or what if he was just a pathological liar? And so there was no basis on which she could have possibly put any reliance on his negative answer. Don't we need more facts to come to a conclusion on this point? Certainly, Your Honor. And that's why the case should be remanded to the trial court for an actual trial where the insurance company can present this kind of evidence if they have it. They did not present it on motion for summary judgment. In fact, what the motion for summary judgment has done is that it's just simply determined that she should have known, even though there was no way for her to know. And the law cannot command perfect knowledge of facts, especially when the facts are not available. And yes, she could have done a background check, but so could the insurance company. In fact, if anyone should do a background check, it is the insurance company. But a trial, definitely. That's why we asked for this case to be remanded to the trial. So we have you over your time. I'll still give you a minute for rebuttal, but let's hear from your opposing counsel. Good morning. May it please the court. My name is Michael Goldman. I'm counsel for Great Lakes Insurance in this matter, the appellee. Your honors, this entire case, I think, turns on the answer to this question. Who bears the risk of Mr. Kerchelik's failure to truthfully disclose to Miss Smith his criminal background? Now, with respect to the facts, I want to make clear a few things that we don't dispute. We don't use that in a derogatory sense, your honors. We believe she was lied to by her boyfriend, Mr. Kerchelik. But secondly, there is a statement of fact in Smith's briefs that Smith made no representation on the application, one way or the other, as to Mr. Kerchelik's criminal background. That is absolutely false. The record shows, the application, which was attached to our summary judgment motion, your honors, shows that the question was specifically asked, does this operator have any record of criminal convictions? And it was answered N-A, not applicable. So it is false and undisputable that Miss Smith made no representations on the application. But she certainly did make a representation on the subject, not applicable, that he did not have a record of criminal conviction, your honors. Well, can I jump in and just put the same question that I posed to your opponent to you? Of course, your honors. I mean, I understand your position, that the duty of utmost good faith is on her, not on your client. And so it does obligate her to disclose information that she either knows of or that she ought to have known of. I would definitely sympathize with your client's position if she had just simply never asked the man and just, you know, put no and had no basis for making that representation. But she at least asked him, received an assurance from him that he did not have such a conviction and relied upon that. Wasn't it the obligation of your client at the summary judgment stage to put on evidence to demonstrate that she nonetheless ought to have known that he was, in fact, lying when he responded that he didn't have a conviction? No, your honor, because from the case law, the way the courts treat the matter is that question, the answer to what the insured ought to know. The case law treats that as a legal question, not a factual one. And there are two cases, your honor, directly on point, both involving the exact same marine insurer, involving the exact same application and the exact same issue. A significant other who isn't truthful with the insured. The first one is the Great Lakes v. Arbos case, your honor. And the second one is Great Lakes v. Cranning. Those are from the Southern District of Florida and from the District of the Virgin Islands. And in both cases, you have an insured who fills out an application and asks for information about the other disclosed operator who is in each case a boyfriend or a girlfriend. And the significant other provides the false information and leads to that's a material misrepresentation. The insurer denies the claim. And in both cases, your honor, the district courts treat it as a legal matter, considering what the insured ought to know. And in both cases, your honor, the courts granted summary judgment for Great Lakes and held that the burden of ought to know about a co-operator's background lies on the insured. And the reason is, your honor, because the insured is the one better placed to quickly, efficiently, cheaply get truthful information, your honor, from other operators. I'd like to answer specifically. Mr. Goldman, if it is a question of law, what is the standard that should be applied in answering the question as to what the insured ought to have known? What's the standard? The courts that have considered the question actually have not specifically stated the standard. There is only the court. The courts have held, however, that information in the possession of a disclosed co-operator is ought to have known. And that is both in the context of other operators who are actual agents, such as employees, and other employees not in an agency relationship, but merely significant others. That the truth about other operators ought to be within the realm of the knowledge of the insured. No, but that, I mean, just common sense tells you that depends on the circumstances, doesn't it? If it does depend on the circumstances, I don't see how it could be a question of law. No, it's, you know, I mean, somebody should put the circumstances before the court, you know, either in summary judgment or trial and, you know, otherwise I don't see how the court can answer that question without knowing the circumstances. I think it's answered this way, your honor, and let me answer with reference to a good point that my brother-in-law brought up. There is no duty of inquiry whatsoever put on the insurer. The insurer isn't obligated at all to look at the information and to scrutinize it and say, is this really true? The insurer isn't under any obligation to look at that application and say, it says no criminal convictions, but I'm going to assign an investigator to figure it out. When you say there's no obligation, are you talking about under this Uber doctrine or under New York contract law? Both are identical, your honor, and on this particular point, the Ninth Circuit has said this is an established rule of federal admiralty law, that there is this non-delegable duty of truthful disclosure, but there is the Fifth Circuit, your honor. Excuse me, fifth? Yes, I believe it's the fifth that no longer follows the doctrine, so that's why the choice of law clause elects New York as an alternative, but New York and federal are identical on the subject, your honor. And have you briefed New York law anywhere? I mean, am I right that if this doctrine didn't apply, we would need to answer what New York law would do with this contract? No, because the doctrine is identical under both, your honor. It didn't come up at all because no one below had raised the issue, but the reason New York law was chosen as the alternative, besides the connections that Great Lakes has to New York. Obviously, Great Lakes can't just pick out of thin air what law it's going to use, but the reason New York was chosen, of all its various connections, is because New York applies the exact same doctrine. The insured is obligated to truthfully disclose all material facts, which includes those facts that ought to be known. All right. Can I go back to Judge Shishima's question to you? The cases you cited, which you said stand for the proposition that the ought to have known inquiry is a legal, you know, there's some legal standard, but then you were asked, well, what is the standard? And you said, well, you don't really know. I thought that the reason you're not able to give a good answer there is that in both those cases, what the courts ultimately said is that as a legal matter, the knowledge of the person whose information was not disclosed was, as a legal matter, imputed to the insured. And that's why, in that case, even though they didn't have actual knowledge of the undisclosed fact, they were nonetheless found by it. Am I wrong in remembering that that was the legal basis for the decisions in those two cases? I don't think so. And I would love to tell you, Your Honor, that the other operators were treated as agents whose knowledge was imputed to the principal. And there are cases where that is the case involving employees, captains, that sort of thing. No, in both of those cases, Your Honor, Arbos and Cranig, I don't believe the insureds maintained the exact same defense, innocent ignorance that they went to the significant other, the boyfriend or girlfriend and said, I have to truthfully disclose your history of vessel losses because the application specifically asks for it. And in the Cranig case, the girlfriend did not tell the truth to Mr. Cranig. And the court held that Mr. Cranig ought to have known regardless and granted summary judgment to Great Lakes. And the same thing happened in Arbos. That was another case where the insured, the girlfriend, went to the boyfriend and said, please, I need to disclose your record of criminal convictions. I forget what that one off the top of my head was, but the boyfriend did not disclose it to Ms. Arbos. And the Southern District of Florida said that notwithstanding the fact that you are a victim of his untruth, you ought to know. And I think the reason for it, Your Honor, is because there's no duty of inquiry placed on the insurer. The insurer is entitled to look at it without having to doubt. And that affects the premiums that are charged for every single policy of insurance that this insurer and every marine insurer issues throughout the United States, Your Honor. The insurer is entitled, the underwriter, at his desk, at his box at Lloyd's, is entitled to look down and not have to worry that he has to send a surveyor to make sure the vessel's not rotten, that he doesn't have to worry that the fire extinguishers are all certified. I'm listing things that are common in because there's no duty of inquiry that has to place the burden of ought to know on the insured, Your Honor. Thank you, counsel. We have you over your time, so let's hear from your opposing counsel for a minute of rebuttal. Thank you very much, Your Honor. Your Honors, if upheld, the trial court's ruling would produce a windfall for insurance companies. What Great Lakes is saying, basically, is that they have no duty at all to investigate the background or the information on the insurance form until after the accident happens or the boat sinks. The term significant other does not appear in any of the cases in this circuit or in any of the large districts. It's a very vague term, significant others. What it does is that it opens up the possibility that someone going in for a day, you know, renting a boat for a day or a couple, you know, for a jaunt over a weekend jaunt would have to do a background check on all the friends that they invited upon the boat if at any time any of the friends happen to take control of the boat for even a small period of time. Yes, this is a great thing for insurance companies. They wouldn't have to do anything. They would have no duty whatsoever. Certainly, they are better placed than any of the insurer to learn about facts which are not available to the insured in the first place. I'm not really sure what insurance, you know, what an underwriter does if all they do is make sure that the application is filled correctly and then they get to cancel it if something goes wrong, if something is typed wrongly, you know, after an accident happens. So this is a huge windfall for them. It'd be a huge victory to, you know, to allow this to go on. Thank you. Thank you both sides for the helpful arguments. This case is submitted. Thank you very much.
judges: TASHIMA, WATFORD, FRIEDLAND